## WINDLE, EXECUTOR, v. WILLIAMS, GUARDIAN.

[No. 2,226. Filed September 16, 1897.]

APPEAL AND ERROR.—*Sufficiency of Complaint May be Assailed on Appeal for First Time.*—Under section 346, Burns' R. S. 1894, the sufficiency of a complaint may be raised for the first time by assignment of errors in this court.  *p. 162.*

PRINCIPAL AND SURETY.—*Contribution Between Co-Sureties.—Complaint.*—A complaint by a guardian of an insane person, alleging that his ward became surety with defendant's decedent and another on certain notes, and to prevent suit being brought was compelled to pay such notes, and that the maker and other surety were insolvent, and demanding that the estate of decedent contribute one-half·of the amount so paid, states a cause of action.  *pp. 159–162.*

SAME.—*Contribution Between Co-Sureties.—Complaint.*—A complaint by a guardian of an insane person alleging that his ward became surety with defendant's decedent and another on three certain notes, and to prevent suit being brought was compelled to pay such· notes, and that payment was demanded of decedent in his lifetime, and of the administrator of decedent's estate, which had been refused, and demanding judgment against the estate, states a cause of action.  *pp. 159–162.*

Windle, Executor, *v.* Williams, Guardian.

SAME.—*Alteration of Instrument by Procuring Additional Sureties.—
Discharge.*—Where a promissory note has been fully executed and
delivered, without any agreement that further signatures thereto
shall be obtained, and another person signs the same without the
knowledge or consent of the previous signers, this is such a ma-
terial alteration as relieves the previous signers from liability. *pp.
164–166.*

From the Madison Circuit Court. *Reversed.*

*Charles L. Henry, E. B. McMahan* and *J. A. Van
Osdol,* for appellant.

*M. P. Turner* and *B. H. Campbell,* for appellee.

HENLEY, J.—This action was begun in the lower
court by appellee filing a claim against the estate rep-
resented by appellant. The claim was disallowed
upon the administrators and executors' claim and al-
lowance docket, and was at once, by agreement, trans-
ferred to the issue docket of the circuit court. After
the transfer, appellee filed an additional paragraph
of complaint. The first paragraph alleged that ap-
pellee's ward, a person of unsound mind, became
surety with the decedent, Devault Crowell, and Elias
Ebbert, on two certain promissory notes, given by one
Lewis Ebbert to the Nichols & Shepard Company; that
said notes were for $400.00 each; that on the 19th day
of April, 1893, said notes being long past due, the said
Mary M. Ebbert, as surety, in order to prevent suit
being brought upon said notes, was compelled to, and
did pay upon said notes the sum of $600.00; and that
at the time of said payment, the principal upon said
notes, Lewis Ebbert and her co-surety, Elias Ebbert,
were totally insolvent, and are still involved, and asks
judgment against the estate of Devault Crowell for
$300.00, being one-half of the amount paid by said
Mary M. Ebbert as such co-surety with said Crowell.
A copy of each note is filed with and made part of the

claim or complaint. To this paragraph of complaint appellant answered in four paragraphs. Afterwards, the appellee filed what he denominated an amended complaint, which is in fact a second paragraph of complaint in which a different cause of action is set forth against appellant. This paragraph of complaint avers that appellee's ward, Mary M. Ebbert, became surety for decedent, Devault Crowell, and Lewis Ebbert, upon three certain promissory notes to Nichols & Sheppard, each of said notes calling for $400.00; that the said principals, Crowell and Ebbert, failed to pay the same, or either of them, when they became due, and that on the 19th of April, 1893, said notes being past due and unpaid, the said Mary M. Ebbert, appellee's ward, was compelled to, and did pay thereon the sum of $600.00 to the holder of said notes; that said appellee frequently, before the bringing of this action, demanded payment of said sum from said Crowell in his life time, and from the administrator of said Crowell's estate, which payment was refused, and judgment is demanded against said Crowell's estate for $700.00. Both paragraphs of claim or complaint are properly verified. To this paragraph of complaint the appellant answered in four paragraphs.

The first paragraph of answer was a general denial, the second a *non est factum,* the third paragraph of answer is as follows:

"Third. And for third and further paragraph of answer to plaintiff's additional second paragraph of complaint, and which is designated as paragraph second herein, Thomas Windle, as executor of the estate of Devault Crowell, deceased, says that he admits that his decedent, on the 3d day of September, 1889, signed a note for the sum of $400.00, due on or before the first day of October, 1891, and payable to the Nichols & Shepherd Company, with one Lewis Ebbert.

"And he further avers that his said decedent signed said note as security for the said Lewis Ebbert, and in no other capacity whatever. And he further avers that the note, since its execution, has been materially altered and changed, and was so altered and changed before the time of the alleged payment thereon by claimant's ward, and without any knowledge or consent on the part of said decedent or his executor, in this, to wit: that when said note was executed and delivered to the said Nichols & Shepherd Company, it bore only the signature of Lewis Ebbert and Devault Crowell; and that long afterwards, and after said note had become due, and a number of payments had been made thereon, and without any knowledge or consent of the decedent, Crowell, or his executor, the names of Mary Ebbert and Elias Ebbert were procured by the holders, the Nichols & Shepherd Company, to be attached thereto, as additional security thereon. Wherefore, said executor says that said claimant is not entitled to recover anything on account of the alleged payment of said note, and he prays judgment for costs."

The fourth paragraph of answer is precisely the same as the third, except that it is made to apply to the $400.00 note falling due on or before October 1, 1892. These answers were all verified. Neither the complaint nor answers were tested by demurrer in the lower court. The cause was put at issue by replying the general denial, and was submitted to the court for trial without the intervention of a jury. The court rendered judgment against appellant in the sum of $750.00.

The appellant has assigned error to this court as follows:

"First. The appellee's claim, or complaint, does not state facts sufficient to constitute a cause of action.

"Second. The appellee's amended claim, or complaint, does not state facts sufficient to constitute a cause of action.

"Third. The court erred in overruling appellant's motion for a new trial."

There can be no doubt but that the validity of the complaint may be assailed on appeal for the first time. Section 346, Burns' R. S. 1894 (343, R. S. 1881). Also, see *Western Assurance Co.* v. *Koontz*, 17 Ind. App. 54, wherein this question is discussed at length. We are convinced, however, that each paragraph of complaint presents, upon its face, a valid cause of action against the estate of appellant's decedent, and the real question in this case arises from the action of the lower court in overruling appellant's motion for a new trial.

It seems to us impossible to read the record in this cause without being convinced that an injustice has been done the appellant. The undisputed facts in the case are, that on the 5th day of September, 1889, Lewis Ebbert and the decedent, Devault Crowell, signed the notes from which the controversy arises; that Lewis Ebbert's name appeared first upon the notes, and Crowell's name under that of Ebbert; that the notes were given in payment of a traction engine purchased of Nichols & Shepherd Company; that at the time the notes were executed and delivered, there was a chattel mortgage given by said Lewis Ebbert and Devault Crowell to the payees of said notes to secure the payment of the same; that the names of Lewis Ebbert and Devault Crowell were the only names appearing upon the note as makers, and that no other names were thereon at the time the sale was completed and the notes executed and delivered; that nearly two years after the transaction was thus com-

pleted, the agent of the payee of said notes procured
the signatures of Mary Ebbert and Elias Ebbert to
said notes; that such signatures were procured with-
out the knowledge or consent of Crowell, and without
the knowledge or consent of said Thomas Windle, his
executor; that Crowell was, during all said time, sol-
vent; that Mary Ebbert paid the $600.00 upon said
notes, which was received by the payees, and credited
thereon; that no consideration passed to Mary Ebbert
at the time of her signing said notes. These are some
of the undisputed facts. About the only disputed
point upon the evidence was whether or not Crowell
was the surety of Lewis Ebbert when he executed the
notes, or was a joint owner of the property purchased,
and a principal in the execution of the notes. The
evidence upon this point is very conflicting. One of
appellant's witnesses, A. R. Aimen, who was the local
agent for Nichols & Shepherd at Pendleton, and who
sold the engine for which the notes were given, testi-
fied that he sold it to Lewis Ebbert alone, and upon
witness asking Ebbert who he would get to become
his surety, Ebbert replied, that he would get Crowell;
that Ebbert and his surety Crowell signed the order
as was required by the Nichols & Shepherd Company,
and that, when the engine arrived, he settled with Eb-
bert, and took the notes and chattel mortgage, and
that Crowell signed the chattel mortgage because it
was required by the company for which he, the wit-
ness, was doing business; that on the end of each of
said notes there was written, before they were exe-
cuted, the following words, "Taken by A. R. Aimen,
of Pendleton, Indiana, order numbers 2 and 3 re-
spectively, secured by David Crowell." The evidence
of Lewis Ebbert, Elias Ebbert, and two or three other
witnesses who assisted the Ebberts in running this
machinery, was to the effect that Crowell claimed to

own part of the engine, although it is very hard to reconcile the acts of Crowell as detailed by appellee's witnesses with those of an ordinarily sensible man under such conditions. This court, however, will not weigh the evidence, and the question then arises, is the estate of appellant's decedent liable upon the undisputed facts as shown by the evidence in the record?

Mary Ebbert and Elias Ebbert, who signed the note long after it was fully executed and delivered, were not liable upon the note in any event, there being no consideration for the contract entered into by them. *Favorite, Admr.*, v. *Stidham*, 84 Ind. 423.

Was decedent discharged when, by the agreement of the payee and Lewis Ebbert the names of Mary and Elias Ebbert were added to said notes without his, decedent's knowledge or consent? Devault Crowell was one of the makers of the notes out of which the action arose, and if the alteration was a material one, it does not matter to a determination of the cause, whether as such maker he occupied the relation of surety or principal. In either case he would be released, and if released by such alteration, the payment of such notes afterward by Mary Ebbert was of no benefit to him or his estate, and this action could not be maintained. It is the settled rule of law in this State, that where a promissory note has been fully executed and delivered, without any agreement that further signatures thereto shall be obtained, and another person signs the same without the knowledge or consent of the previous signers, this is such a material alteration as relieves the previous signers from liability. *Henry* v. *Coats*, 17 Ind. 161.

The case of *Bowers, Admr.*, v. *Briggs*, 20 Ind. 139, is strongly in point, the facts in that case being almost identical with the facts in the case at bar. The Supreme Court, in the last mentioned case, says: "The

principal question in the cause is whether the altera-
tion of the note, procured by the payee, by the addi-
tion of the name of another party as maker, after it
has been executed and delivered to the payee by the
former parties, and without their consent, rendered it
void as to such original parties. That such alteration
avoided the note as against such original parties, we
have no doubt."

And in the case of *Nicholson* v. *Combs*, 90 Ind. 515,
the Supreme Court, speaking by Elliott, J., says: "It
is settled law in this State that the material alteration
of a promissory note, made at the instance of the payee,
and without the knowledge of the maker, releases the
latter from all liability on the note.   \*   \*   \*   It is also
firmly settled that the addition of the name of a party
as maker is a material alteration of the instrument."

This court, in the case of *Owens* v. *Tague*, 3 Ind. App.,
page 245, says: "If the payee was not satisfied with
the contract which his agent had made, and wished to
have additional surety upon the note, *the consent of
all other parties to the contract should have been ob-
tained to the change.*"

The case of *Ford* v. *First Nat. Bank of Cameron*
(Tex.), 34 S. W. 684, fully discusses the point under
consideration in the case at bar. Brown, C. J., deliv-
ering the opinion of the court in that case says: "The
reason why the addition of a name to a note as a joint
maker, after its issuance, materially alters it, is be-
cause it changes the number of parties, and their rela-
tive rights; it changes the rate of contribution; and it
changes the character and description of the instru-
ment. The *original obligor* may thereby be subjected
to a suit in a county other than that of his residence,
and suffer inconvenience and injury, as was done in
this very case. *If it is deemed expedient to obtain an
additional name to a note to make it more secure,*

*and not for the purpose of obtaining some undue advantage, the holder could easily obtain the consent of the maker.* We believe that the rule which requires that the integrity and identity of this class of paper shall be maintained presents no hardship, and is founded on sound policy."

The notes out of which this action arose were promissory notes, payable at a bank in this State, they were, by the law merchant, negotiable as inland bills of exchange. When fully executed and delivered they were perfect contracts, imposing certain liabilities and exemptions peculiar to themselves, and their liability to be in some way tampered with or changed has necessitated the rigid rules governing this class of contracts.

Counsel for appellant also contend that the payment made by Mary M. Ebbert was a voluntary payment, made by her without the knowledge or consent of the decedent or his executor, and she, not being legally bound to make the payment, she cannot hold decedent's estate therefor. It is not necessary for us to pass upon this question, as the cause must be reversed for the reasons already given.

Cause reversed, with instructions to the court below to grant appellant's motion for a new trial.