FIRST NATIONAL BANK OF SOUTH BEND *v.* MAYR ET AL.

[No. 23,603.    Filed April 22, 1920.]

1. PRINCIPAL AND SURETY.—*Release of Surety Not Under Seal.— Effect.*—An instrument purporting to release one of several sureties was not objectionable on the ground that it, not being under seal, was in legal effect a covenant not to sue and hence ineffective as a release, where the instrument upon which the surety was obligated was likewise not under seal, the release in such case being as binding as if under seal, in view of §466 Burns 1914, §450 R. S. 1881.    p. 303.

2. PRINCIPAL AND SURETY.—*Rights of Surety.*—Though a surety is a favorite of the law, and may stand on the strict terms of his engagement, such rule does not entitle his stipulations to a special interpretation, his rights thereunder being determined in accordance with the rules of construction applicable to all contracts.    p. 304.

3. PRINCIPAL AND SURETY.—*Contract of Surety to Pay Notes.— Effect.*—Parties signing an agreement obligating them jointly and severally to pay notes to be executed by a third party, were, upon the execution of the notes, obligated to the same extent as if all had actually signed the notes.    p. 305.

4. PRINCIPAL AND SURETY.—*Liability of Sureties.*—Where parties to a surety agreement are obligated jointly and severally to pay certain notes, they are, as between themselves and the payee, all makers and severally liable for the whole debt, and the payee may proceed against one or all; but their rights and liabilities as between themselves depend upon the contract between them and the relation each may sustain to the other and to the transaction.    p. 305.

5. PRINCIPAL AND SURETY.—*Contribution Between Sureties.*—In the absence of a contract between sureties fixing their rights and liabilities as to each other, equity requires each of the solvent sureties to contribute such sum to the cosurety who paid the debt as will make them equal in the loss.    p. 306.

6. Principal and Surety.—*Rights of Surety.*—In determining rights as between creditor and surety, their specific agreement reasonably interpreted controls. p. 307.

7. Principal and Surety.—*Contribution Between Sureties.*—The right to contribution arises between sureties only when one has paid more than his moiety. p. 307.

8. Principal and Surety.—*Release of Part of Sureties.*—*Equitable Rule.*—A release by a creditor of part of the sureties on notes operates only to discharge the cosureties from the payment of any portion of the debt which the discharged sureties, but for their release, would have been compelled to pay, not counting those who are insolvent. pp. 308, 310.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the First National Bank of South Bend against Frank Mayr, Jr., and others. From a judgment for the defendants, the plaintiff appeals. (Transferred with recommendations from the Appellate Court under §1394, cl. 1, Burns 1914, Acts 1901 p. 565, §10). *Reversed.*

*Arthur L. Hubbard* and *Samuel B. Pettingill,* for appellant.

*Graham & Crane* and *Cyrus E. Pattee,* for appellees.

Myers, J.—This was an action, by appellant against appellees, founded upon a certain written agreement of the following tenor:

> "Memorandum of Agreement between the First National Bank of South Bend, Indiana, of the first part and the other persons who shall sign this agreement.
>
> "The Modern Specialties Manufacturing Company of South Bend, Indiana, desires to borrow not to exceed Fifteen Thousand Dollars ($15,-

000.00) of the First National Bank of South Bend, Indiana, and to execute its note or notes therefor at such times and rates as may be agreed upon. Now, in consideration of anv such loan or loans, the undersigned agree with said bank and each other to pay all such loans as shall be evidenced by the promissory note or notes of the Modern Specialties Manufacturing Company executed by its President or Treasurer, and the undersigned as sureties for said Modern Specialties Manufacturing Company do hereby jointly and severally agree to and with said First National Bank to pay all such notes for loans when the same shall become due according to the terms thereof, without relief from valuation or appraisement laws and with all attorneys' fees incurred in the enforcement of this contract, and waive presentment for payment, protest and notice of protest and nonpayment of such notes, and that the receipt of interest in advance shall not discharge any of such sureties.

"This shall be a continuing Agreement to secure to said bank the repayment of not to exceed the total loan of $15,000 whenever and in whatever sums made, and all renewals thereof until fully paid.

"Witness our hands this 24th day of February, 1914:

"C. E. Pattee,          E. E.Ash,
"G. W. Blair,           Frank L. Krüg,
"J. D. Beitner,         J. Winter,
"Frank Mayr, Jr.,       F. G. Eberhart,
"Geo. H.Mayr,           R. G. Page."
"C. C. Tiedeman,

From the complaint it further appears that the Modern Specialties Manufacturing Company executed notes to appellant as follows: September 20, 1915, for $2,500; October 11, 1915, for $1,000; and on November 6, 1915, for $11,500; each of which notes was due ninety days after date with six per cent interest after maturity. Thereafter appellant executed the instrument following:

"RE: Modern Specialties Mfg. Co.,
South Bend, Ind.,May 17, 1916.

"Mr. F. G. Eberhart,
"Mishawaka, Ind.

"Dear Sir: For and consideration of the sum, of $10,000, Ten Thousand Dollars, paid to us, and of the acquiescence therein of those of your creditors for whose benefit substantially all of your remaining assets are being transferred to the Continental and Commercial Trust and Savings Bank, as Trustee,—

"We hereby consent to such transfer and agree that neither we nor any assignee of any of our claims against you, will take any action which will have the effect of setting aside or invalidating the transfer to said trustee.

"In consideration of the above payment we also release and discharge you, R. G. Page and G. W. Blair, from any and all liabilities in connection with the indebtedness of the Modern Specialties Mfg. Co.

"Very truly yours,
"First National Bank of South Bend,
"By Chas. L. Zigler, Cashier.
"South Bend National Bank,
By Myron Campbell, Cashier."

The complaint also shows that on May 20, 1916, and thereafter and at the time of filing the same, September 16, 1916, the specialties company was insolvent; that after crediting the notes of the specialties company to the bank of date May 20, 1916, with the payment of $10,154.41, made by Eberhart, there was a balance due the bank of $2,326.36, and for the collection of which this action was commenced. A separate and several demurrer by appellees to the complaint was sustained, and this ruling is here assigned as error.

The question for our consideration is, Did the instrument executed by the bank to Eberhart, Page and Blair have the effect to release appellees?

It has been urged that, as the alleged release of Eberhart, Page and Blair was not under seal, it was in legal effect a covenant not to sue, and therefore insufficient as a release. This assumption must rest upon the theory that the instrument

1.

contains no recital of a consideration which, at common law, a seal would import. However, it will be noticed that the instruments above set out are of equal dignity and weight. Neither is under seal, and both were executed and were to be performed in this state, where, by statute, the common law respecting the use of a seal has been greatly modified. Acts 1881 p. 240, §319, §466 Burns 1914, §450 R. S. 1881. This section provides that: ''There shall be no difference in evidence between sealed and unsealed writings; and every writing not sealed shall have the same force and effect that it would have if sealed. A writing under seal, except conveyances of real estate, or any interest therein, may therefore, be changed, or altogether discharged, by a writing not under seal. An

agreement in writing, without a seal, for the compromise or settlement of a debt, is as obligatory as if a seal were affixed.''

As the question suggested does not involve a specialty, we are not called upon to decide what influence the above legislation would have on such an instrument, but in the present case we regard the statute as controlling, and the agreement to be as binding as if under seal. *American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 76 N. E. 251.

We are thus brought to a consideration of the real question in this case. The parties who signed the agreement to the bank all joined in the same engagement and were alike obligated. They jointly and severally agreed with the bank to pay all notes for loans not to exceed $15,000, made to the specialties company, ''when the same shall become due.'' Treating this instrument as a surety engagement, appellant insists that as the debt evidenced by the notes was due when Eberhart made the $10,000 payment, and it not appearing that this payment conferred a benefit on appellant to which it was not then entitled, or that Eberhart or anyone else was thereby prejudiced, it follows that there was no consideration to support a release agreement. Hence the alleged release was no more than a covenant not to sue the persons therein named.

The many times reiterated conclusion that a surety is a favorite of the law, and entitled to stand on the letter of his contract, has given rise to the thought that he occupies some peculiar situation entitling his stipulations to a special interpretation not accorded other contracts. But such is

not the rule. While he may insist on the strict terms of his engagement, yet these terms are determined in accordance with the established rules of construction applicable alike to all contracts. *Irwin* v. *Kilburn* (1885), 104 Ind. 113, 3 N. E. 650; *Weir Plow Co.* v. *Walmsley* (1887), 110 Ind. 242, 11 N. E. 232; *Walsh* v. *Miller* (1894), 51 Ohio St. 462, 38 N. E. 831; Brandt, Suretyship and Guaranty (3d ed.) §§103, 104.

In the present case the contract with the bank executed by appellees and others, and the notes of the specialties company all made part of the complaint, are to be considered together. This done, we conclude that upon the execution of the notes, as in the contract provided and within the limitation therein fixed, all having reference to the same identical debt, the obligation thereby created was the same as if all had actually signed the notes. *Stevens* v. *Tucker* (1882), 78 Ind. 109, 122; *Houck* v. *Graham* (1886), 106 Ind. 195, 6 N. E. 594, 55 Am. Rep. 727; *Durbin* v. *Kuney & Sayers* (1890), 19 Ore. 71, 74, 23 Pac. 661.

By express stipulation, all who signed the surety agreement promised jointly and severally to pay the notes, and to that extent the relation between the creditor and sureties was expressed. As to the payee of the notes, they were all makers and severally liable for the whole debt. The payee might have proceeded against any one or all, but as between themselves their rights and liabilities depended upon "the contract between them, upon the relation each may sustain to the other and to the transaction." *Schooley* v. *Fletcher* (1873), 45 Ind. 86, 89; *Starry* v. *Johnson* (1869), 32 Ind. 438; *Morrison*

v. *Fishel* (1878), 64 Ind. 177; Acts 1875 p. 119, §9085 Burns 1914, §5516 R. S. 1881; Brandt, Suretyship and Guaranty (3d ed.) §110.

None of the parties to the agreement, by express contract, became surety for the other, and for aught appearing, there was no contract between the sureties fixing their rights and liabilities as to each other. This being true, under well-settled equity principles applicable to sureties, justice requires that each contribute to his cosurety who has paid the debt so much thereof as will make each equal in the loss, counting only those who are solvent. As said in *Michael* v. *Allbright* (1890), 126 Ind. 172, 174, 25 N. E. 902, 903: "Where one or more of the sureties are insolvent they will divide and apportion the amount paid among those who are solvent." See, also, *Windley, Exr.,* v. *Williams, Gdn.* (1897), 18 Ind. App. 158, 47 N. E. 680; *Gross* v. *Davis* (1889), 87 Tenn. 226, 11 S. W. 92, 10 Am. St. 635.

The recitals in the release show an engagement not contemplated by the surety obligation and a consideration aside from the $10,000 payment. In determining the force of this instrument, these recitals should not be overlooked, for they take this case out of the partial-payment rule of a past-due liquidated debt, which appellant would have us apply in order to construe the release as a covenant not to sue. From the credit indorsements on the notes, it appears that Eberhart paid $9,862.62, and the company $291.79, in all aggregating $10,154.41. The notes on which these payments were made were all past due and amounted to $12,480.77. It sufficiently appears that these payments were not made with the intention on

the part of any one of satisfying the debt or of discharging the principal debtor.

The company was then insolvent, but from anything here shown all who signed the surety agreement, other than Eberhart, were at that time solvent and financially able to pay their proportion of the debt. By that agreement they voluntarily assumed a common burden and thereby as between themselves invoked the principle "equality is equity," and by virtue of their relation equity distributed the burden among them according to their respective shares of the common debt. 2 Beach, Modern Eq. Jurisp. §§822, 823; *Smith* v. *State* (1877), 46 Md. 617; *Hard* v. *Mingle* (1912), 206 N. Y. 179, 99 N. E. 542, 42 L. R. A. (N. S.) 1131; *Jemison* v. *Governor, etc.* (1872), 47 Ala. 390, 405; *Fletcher* v. *Grover* (1840), 11 N. H. 368, 35 Am. Dec. 497.

The question here is between creditor and surety, and their rights are measured by the specific agreement reasonably interpreted. *Weir Plow Co.*

6.    v. *Walmsley, supra.* There is no claim of any dealings between the creditor and principal debtor, without the assent of the surety, amounting to a departure from the contract by which the surety is bound, or want of diligence, or of any alteration or modification of the contract, other than the effect of the unqualified release of certain sureties on the surety relation as to the right of contribution.

The right to contribute arises between sureties only when one has paid more than his moiety, but, under the facts shown in the case at bar, it

7.    affirmatively appears that the unpaid proportion of the bank's demand distributed between

the unreleased sureties will not equal their proportion of the entire obligation, so that, if they were compelled to pay their proportion of the balance, they would have no right of action for contribution, consequently the situation, rights, or remedies of appellees have not been disturbed by any act of the creditor.

While the bank ordinarily would not be concerned with the right of contribution between sureties, yet it has been held that any affirmative act on its part, which would impair that right, would diminish the amount of its recovery against any surety to the extent of such impairment. *Hard* v. *Mingle, supra; Gordon* v. *Moore* (1884), 44 Ark. 349, 51 Am. Rep. 606.

A mere glance at the figures and facts here exhibited shows that the Eberhart payment was in excess of the combined distributive shares or proportion of the entire debt of the three persons mentioned in the release. So that if it be conceded that the release was sufficient to discharge Eberhart, Page and Blair, then sound reason and justice demand that such release should only operate to discharge appellees from the payment of any portion of the debt which such discharged sureties, but for their release, would have been required to pay, not counting those who are insolvent. *Pegram* v. *Riley* (1889), 88 Ala. 399, 6 South 753.

In *Morgan* v. *Smith* (1887), 70 N. Y. 537, 542, it is said: ''The rule in equity is, that when a cosurety has, by the conduct of the creditor, been released from his liability, the remaining cosurety will be held exonerated only as to so much of the original debt as

the discharged cosurety could have been compelled to pay, had his obligation continued." See, also, *Fletcher* v. *Grover, supra; Schock* v. *Miller* (1849), 10 Barr (Pa. St.) 401; 21 R. C. L. 1050, §95; Ann. Cas. 1917B, note p. 1183. This court, in the case of *Stockton* v. *Stockton, Jr.* (1872), 40 Ind. 225, announced that: "It is a familiar principle of law, that the release or discharge, by the agreement of the payee, of one or more of several joint debtors is a release of all the others." The fact that the note in that case was a joint note ,and not several, or joint and several, seems to have had controlling influence. The ruling thus made is not in keeping with the more modern authorities. It was based solely on the common-law rule (*Erwin* v. *Scotten, Admr.* [1872], 40 Ind. 389) that the release by a creditor of one surety without the knowledge or assent of the other released both. This was so because of the rule which regarded the liability of a surety as *strictissimi juris,* and released him in case of the slightest change in his obligation. But the "equitable doctrine has been generally accepted and is now the established rule of law in most jurisdictions." Ann. Cas. 1917B, *supra;* 1 Brandt, Suretyship and Guaranty §279.

Missouri now has, as do many other states, a statute on the subject of the rights of sureties, but in the case of *Singleton* v. *Shepherd* (1917), 196 Mo. App. 505, 183 S. W. 1077, the court held that the statute did not apply, and placed its decision upon cases decided prior to its enactment. In that case the court recognized the rule that " 'the discharge of one surety cannot be permitted to increase the liability of the others,' " and, speaking to the question, where one surety had paid less than one-half of the debt, and

was by the creditor released, and later the other surety, on being required to pay his full half, brought suit against his cosurety for contribution, said: "Each of two sureties owes the entire debt to the creditor and if he releases one he releases the other for one-half the debt; but, as between themselves, each owes one-half the debt and if one settles his half at a discount, we do not see why the other should ask him to come in and help settle the other half." To this conclusion, many authorities are cited. This decision preserves the rule that if one surety compromises or settles the original demand for less than its face, he may have contribution from the other for his proportion of the amount so paid on the theory that he has aided his cosurety by wiping out a debt they both owed.

In the case of *Smith* v. *State, supra,* it is said: "In equity, however, the rule is different, and the release of one or more sureties will not be construed to have this effect, unless it subjects the cosureties to an increased risk or liability. * * * It is difficult to imagine on what principle it can be maintained in equity, that the mere release of one surety discharges the other sureties from liability. As between themselves, the sureties are liable only for their proportion of the debt, and the right of contribution does not exist unless they have paid an amount exceeding this proportion."

In conclusion, and in accordance with sound reason and well-considered authority, we adopt the equitable rule, and hold, that the creditor's release

8. and discharge of one or more sureties will operate as a discharge *pro tanto* only of the cosureties.

We further conclude that the ruling to which we have referred in the Stockton case should be and the same is hereby modified to conform with this opinion.

In the instant case, the demurrer to the complaint should be overruled. Judgment reversed, with instruction to the court below to overrule the demurrer . to the complaint, and for further proceedings.