John T. IRISH, Appellant–Plaintiff,

v.

F. Lawrence WOODS, Appellee–
Defendant.

No. 49A02–0605–CV–439.

Court of Appeals of Indiana.

April 24, 2007.

Alan S. Brown, Nelson D. Alexander, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellant.

Linda L. Pence, R.C. Richmond, III, Sommer Barnard PC, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

John T. Irish appeals the trial court's judgment dismissing Count I of his original complaint and Count I of his amended complaint for failure to state a claim upon which relief can be granted under Trial Rule 12(B)(6). Irish raises two issues for our review, which we consolidate and restate as whether the trial court erred when it held as a matter of law that Woods does not have common liability as a cosurety with Irish but is a subsurety under the documents Irish attached to his complaints.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 2000, Irish and F. Lawrence Woods formed Seaton Yacht & Ship, L.L.C. ("the L.L.C."). On September 11, 2001, Woods executed a $400,000 promissory note ("Note I") on behalf of the L.L.C., payable to Old National Bank ("Old National"). Irish and Woods each executed individual guaranties of Note I. Irish's guaranty was unlimited and Woods's guaranty was limited to $125,000. Note I was due in full on May 11, 2002.

On January 25, 2002, on behalf of the L.L.C., Woods renewed and modified Note I by executing a $500,000 promissory note ("Note II"), payable to Old National. Note II included the indebtedness owed under Note I and was also due in full on May 11, 2002. Again, Irish and Woods each executed individual guaranties of Note II. Irish's guaranty was unlimited

while Woods's guaranty was capped at $160,000.

On May 11, 2002, on behalf of the L.L.C., Woods renewed and modified Note II by executing yet another promissory note ("Note III") payable to Old National in the principal amount of $492,170.58. In his individual capacity, Irish signed Note III as a "Borrower" along with the L.L.C., although Irish did not personally receive any direct benefit from that Note. Appellant's App. at 39. Note III was due in full on November 30, 2002.

Also on May 11, Woods executed a separate guaranty of Note III. Woods and Old National later agreed to amend that guaranty on August 29. Woods's guaranty of Note III was limited to $160,000, like his guaranty of Note II, but unlike either of his previous guaranties, this last guaranty was a promise to pay "the indebtedness ... *of John T. Irish; and* [the L.L.C.]." *Id.* at 40 (emphasis added). In contrast, Woods had partially guarantied only the indebtedness of the L.L.C. under Note I and Note II. Irish did not sign a separate guaranty of Note III.

The L.L.C. failed to make any payments on Note III, and on January 23, 2003, almost two full months after Note III became due, Irish "purchased"[1] Note III from Old National for $492,170.58, the amount then due on the Note. *Id.* at 47. Two years later, Irish filed suit against Woods to recover on Woods's guaranty of Note III. Irish attached each note and the corresponding guaranty as an exhibit to both his original complaint and amended complaint. Woods then filed two Trial Rule 12(B)(6) Motions to Dismiss Count I, the first on the original complaint's allegation that Irish and Woods were cosureties, and the second on the amended complaint's allegation that Irish, as "purchaser" and holder of Note III, could pursue collection from Woods on his guaranty. In his motions, Woods maintained that the exhibits to Irish's complaint demonstrated that Irish had failed to state a claim upon which relief could be granted. The trial court dismissed Count I of Irish's original and amended complaints and certified both orders as final judgments.[2] This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Irish appeals from the trial court's orders granting Woods's motions to dismiss Count I of the original and amend-

---

1. In Count I of his original complaint, Irish alleged that he "paid" Note III in full, and was therefore entitled to contribution from Woods. Appellant's App. at 19. After the trial court dismissed the original complaint on Trial Rule 12(B)(6) grounds, Irish amended that portion of his complaint to allege that he had "purchased" Note III pursuant to a Loan Sale Agreement between he and Old National and that, as such, Woods owed Irish $160,000 on the "presently due" and unpaid Note III. *Id.* at 47.

2. The trial court certified as a final judgment both its order dismissing Count I of the original complaint and its order dismissing Count I of the amended complaint. Although the filing of an amended complaint supersedes the original complaint, *see, e.g., Rausch v.* Reinhold, 716 N.E.2d 993, 999 (Ind.Ct.App. 1999) (quoting *Inter State Motor Freight System v. Henry*, 111 Ind.App. 179, 38 N.E.2d 909, 911 (Ind.Ct.App.1942), *trans. denied*), we review a trial court's certification under the abuse of discretion standard, *see Legg v. O'Connor*, 557 N.E.2d 675, 676 (Ind.Ct.App. 1990). Here, the allegations in both complaints require an analysis of the same exhibits. And, in any event, if Irish had not amended Count I of his original complaint, in due course the dismissal of that count would have been eligible for certification as an interlocutory order or, eventually, reviewable on a direct appeal. Thus, we hold that the trial court did not abuse its discretion in certifying both orders as final judgments.

ed complaints under Indiana Trial Rule 12(B)(6). A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim rather than the facts supporting the claim. *Gorski v. DRR, Inc.*, 801 N.E.2d 642, 644–45 (Ind.Ct.App. 2003). As such, we review *de novo* a trial court's ruling on a Trial Rule 12(B)(6) motion. *Paniaguas v. Endor, Inc.*, 847 N.E.2d 967, 969 (Ind.Ct.App.2006), *trans. denied*. Dismissal for failure to state a claim is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Gorski*, 801 N.E.2d at 644–45.

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, this court accepts as true the facts alleged in the complaint. *In re Train Collision (Dillon v. Chicago Southshore & South Bend RR. Co.)*, 670 N.E.2d 902, 905 (Ind.Ct.App.1996), *trans. denied, cert. denied*, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997). But a court need not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading. *Rainey v. Nat'l Check Bureau, Inc.*, 849 N.E.2d 776, 778 (Ind.Ct. App.2006). Further, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir.1998).[3] Indeed, "a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id.* at 455 (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir.1992)). Nor need a court accept as true conclusory, non-factual assertions or legal conclusions. *Richards & O'Neil v. Conk*, 774 N.E.2d 540, 547 (Ind. Ct.App.2002).

### Irish's Status Under Note III

Before we can address the relationship between Irish and Woods, we must first determine Irish's status under Note III, which designates Irish as a "borrower." Note III begins with the following: "PROMISE TO PAY. John T Irish; *and* [the L.L.C.] ('Borrower') *jointly and severally* promise to pay [Old National] ... the principal amount of [$492,170.58] ...." Appellant's App. at 38 (emphases added). A borrower is a principal obligor. *See* I.C. § 26–1–9.1–102 cmt. 2.a. ex. 3. The language of Note III differs from the language of Note I and Note II, neither of which designates Irish as a borrower. Thus, Irish is a principal obligor in his relationship to Old National under Note III.

But Irish alleges in both complaints that he is also an accommodation party. Where a party places his signature on a note solely for the benefit of another party, and without receiving any direct benefit himself, he is an accommodation party. Whether Irish received any direct benefit as a comaker is a question of fact that would affect our reading of Note III. *See First Fed. Sav. Bank v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind.1990). Under Trial Rule 12(B)(6), we assume that Irish's allegation is true. Thus, while Irish is a principal obligor vis-à-vis Old National, as an accommodation party he is also a secondary obligor.

---

**3.** As this court has stated, "Indiana's [Trial Rule] 12 is based on and nearly identical to its federal counterpart. Therefore, we may look to the construction of Federal Rule of Civil Procedure 12 for guidance on interpreting our own provision." *Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 n. 1 (Ind.Ct.App. 2001), *trans. denied*.

■■ An accommodation party is considered a surety. *Yin v. Soc'y Nat'l Bank Ind.*, 665 N.E.2d 58, 64 (Ind.Ct.App.1996), *trans. denied.* Generally, a "surety," when that term refers to a person, is "a person who is liable for the payment of a debt or performance of a duty of another person." *Bailey v. Holliday*, 806 N.E.2d 6, 10 n. 1 (Ind.Ct.App.2004) (emphasis removed).[4] As such, although "[a]n accommodation party may sign the instrument as a maker, drawer, acceptor, or endorser and . . . is obliged to pay the instrument in the capacity in which the accommodation party signs," I.C. § 26–1–3.1–419(b), that liability is only relevant in the event of a default by the accommodated party, *see* I.C. § 26–1–3.1–419(e). In such event, the accommodation party's suretyship status allows him to seek reimbursement from the accommodated party. *Id.* As a party with recourse against another party, the accommodation party's suretyship status is equivalent to that of a secondary obligor. *See* U.C.C. § 3–103(a)(17) (2003).

Here, Irish occupies two legal positions. He is a principal obligor vis-à-vis Old National, but he is a secondary obligor vis-à-vis the L.L.C. Specifically, Note III defines Irish, a comaker on that Note, as a borrower. And the Note states that, as a borrower, Irish is jointly and severally liable with the L.L.C. That is, Irish's liability on Note III is one and the same as the L.L.C.'s liability and, as such, his liability is co-extensive with that of the L.L.C. Thus, from Old National's perspective, the plain terms of Note III make Irish a principal, first-tier obligor. But from the perspective of the L.L.C., Irish is an accommodation party. As an accommodation party, Irish is a "secondary obligor" and has recourse against the L.L.C. *See* I.C. § 26–1–3.1–419(e). In sum, Irish is a principal obligor to Old National and a secondary obligor to the L.L.C.

### The Relationship Between Irish and Woods

Having concluded that, as an accommodation party, Irish is a secondary obligor, we note that Woods, as a guarantor, is also a secondary obligor. Hence, we look to the structure and the circumstances of their transaction to determine the relationship between them. Here, Irish contends that the circumstances were that he and Woods were both members of the L.L.C. and engaged in the same enterprise and, therefore, that they stand on equal footing as secondary obligors on Note III. Irish also contends that "there are no . . . documents supporting any type of agreement—express or implied—. . . indicating Irish was to bear the full cost of performance." Appellant's Brief at 15. But in this transaction, where Irish and the L.L.C. signed Note III and Woods signed a separate guaranty of that Note, the question is whether under the contract documents Woods is Irish's cosurety or subsurety as a matter of law.

■■■ For two parties to be either cosureties or subsureties, each party must be a "secondary obligor." Cosuretyship occurs when "two secondary obligors agree that, as between themselves, each should perform part of its secondary obligation or bear part of the cost of performance." Restatement (Third) of Suretyship & Guar. § 53(2) (1996) ("Restatement of Suretyship").[5] "The test of cosuretyship is

---

4. The words "guaranty" and "guarantor" are synonyms for "suretyship" and "surety," respectively. *Yin v. Soc'y Nat'l Bank Ind.*, 665 N.E.2d 58, 63 n. 2 (Ind.Ct.App.1996), *trans. denied.*

5. The trial court and Appellee relied substantially on portions of the Restatement (First) of Security (1941) ("Restatement of Security") in support of their positions. However, the Restatement of Suretyship, in its Foreword,

a common liability for the same debt or burden." *Gray v. Am. Sur. Co.*, 93 Ind. App. 377, 175 N.E. 686, 688 (1931), *trans. denied.* In contrast, subsuretyship occurs "[i]f two secondary obligors agree that, as between themselves, one (the 'principal surety') rather than the other (the 'subsurety') should perform or bear the cost of performance." Restatement of Suretyship § 53(2).

■ Whether a particular party is a cosurety with or a subsurety to another party affects rights of contribution. As we stated in *Fleck v. Ragan*, 514 N.E.2d 1287, 1289 (Ind.Ct.App.1987), "[t]he right of contribution operates to make those who assume a common burden [ ] bear it in equal proportions." Hence, in a cosuretyship, one cosurety is entitled to contribution from the other cosureties so that all cosureties bear the burden in equal, or otherwise agreed to, proportions. *See First Nat'l Bank v. Mayr*, 189 Ind. 299, 127 N.E. 7, 9 (1920); *Fleck*, 514 N.E.2d at 1289; Restatement of Suretyship § 57(1). But that rule does not apply to subsuretyships. Rather, if the principal surety performs on the obligation, it is not entitled to contribution from a subsurety. *See* Restatement of Suretyship § 59 cmt. a. On the other hand, if the subsurety performs on the principal obligation, the subsurety is entitled to reimbursement from the principal surety. *Id.* cmt. c. In the absence of an agreement between sureties, a cosuretyship exists "unless a subsuretyship relationship is established by circumstances that demonstrate that, as between themselves, one secondary obligor ... rather than the other ... should perform

or bear the cost of performance." *Id.* § 53(3).

■ Irish first contends that, because he alleged in his original complaint that he and Woods were in a cosuretyship, the trial court was bound to accept that allegation as true for the purposes of Trial Rule 12(B)(6). We cannot agree. While suretyship status is a question of fact, *see, e.g., Yin*, 665 N.E.2d at 63, the exhibits to Irish's complaints may trump his allegations, *see N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454. Irish attached the notes and guaranties and relied on them to form the basis of Count I in each complaint; hence, if those documents negate his claims, dismissal of the claims is appropriate. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

The exhibits to Irish's complaints demonstrate that he and Woods do not have common liability. As with Note III, Woods's guaranty of Note III begins with the identification of the Note III "borrower" as both Irish and the L.L.C. Again, that is in contrast to Woods's prior guaranties on Note I and Note II, which identified only the L.L.C. as the borrower. In particular, Woods's guaranty of Note III states:

> GUARANTY. For good and valuable consideration, F. Lawrence Woods ("Guarantor") absolutely and unconditionally guarantees and promises to pay to [Old National] ... *the indebtedness ... of John T Irish; and [the L.L.C.] ("Borrower"), or either of them*, to [Old National] on the terms and conditions set forth in this Guaranty.

specifically states that it "should be regarded as completely superseding" the relevant portions of the Restatement of Security. Restatement of Suretyship, at IX. As such, we do not consider the Restatement of Security. But we also are not persuaded by Irish's argument

that illustrations used in the Restatement of Security and not replicated in the Restatement of Suretyship are outdated examples of the law, a proposition that Irish waives by failing to support with citation to authority. *See* Ind. Appellate Rule 46(A)(8)(a).

*Id.* at 40 (emphasis added). In other words, while Irish is liable on Note III for the indebtedness of the L.L.C., Woods's guaranty of Note III makes Woods liable on the indebtedness of both Irish and the L.L.C. Thus, as between them, Woods is a subsurety and his liability on Note III is secondary to that of Irish. While Irish is an accommodation party and surety, he is a maker and first-tier guarantor on Note III and Woods is a second-tier guarantor.

Irish contends that certain provisions of Woods's guaranty of Note III indicate Woods's intent for Old National to "enforce the Guaranty against him without regard to whether [Old National] had first attempted to secure payment of Note III against Irish." Appellant's Brief at 16. Specifically, Irish quotes the following language from that guaranty:

> Guarantor authorizes [Old National], *without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:* . . . (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness. . . .
>
> * * *
>
> Guarantor waives any right to require [Old National]: . . . (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by [Old National] from Borrower, any other guarantor, or any other person[.]

Appellant's App. at 40 (emphasis original). That is, Irish contends that the quoted language, which gives Old National unrestricted recourse without priority, obviates any distinction between him and Woods. But while the quoted language confirms Woods's status as a guarantor, it sheds no light on the nature of his suretyship.

Woods's agreement to be liable on Note III, regardless of whether Old National first attempts to collect on Note III from either the L.L.C. or Irish, does not determine whether Irish has a right to recover from Woods for contribution, as a co-surety, or whether Woods is a subsurety. The quoted provisions are for the convenience and benefit of Old National and do not alter the two-tiered relationship between Irish, as the principal surety, and Woods, as the subsurety.

Irish might well have stated a plausible claim in his original complaint under Note I or Note II, where Irish and Woods occupied equivalent positions. In those notes, and in the corresponding guaranties of those notes by both Irish and Woods, "Borrower" refers only to the L.L.C. *See id.* at 22–37. And both Irish and Woods signed the same guaranties on each of those notes and shared common liabilities for the same debt. But Note III restructured the loan arrangement between the parties and Old National such that Irish became a "Borrower" under Note III. *See id.* at 38–43. The restructured loan altered the parties' respective obligations to Old National and to each other, making Irish liable as a principal on the indebtedness with the L.L.C. and Woods secondarily liable.

### Irish as a Holder by Purchase of Note III

Irish also maintains, in his amended complaint, that he is merely a holder of Note III and is therefore entitled to payment from Woods as a guarantor. Specifically, Irish contends:

> The provisions of the Note Woods signed and his separate Guaranty expressly contemplated an assignment of the Note and Guaranty. The Guaranty specifically authorized [Old National] to "sell, transfer, assign . . . all or any part of the Indebtedness" and "to assign or

transfer this Guaranty in whole or in part." Likewise, the Guaranty provides that it "shall be binding upon and inure to the benefit of the parties ... and [their] assigns."

Appellant's Brief at 23 (citations omitted). That is, Irish contends that because he "purchased" the Note and Woods's guaranty, he is entitled to all the rights of an assignee.

 Irish's position is not well founded. Generally, to allow a principal surety to "purchase" a note for the amount of his liability on that note, so that he may then enforce the subsurety's guaranty as a holder of the note, would violate the principles of subsuretyship. A principal surety cannot "purchase" his own debt and thereby unilaterally circumvent the transaction and create liability for a subsurety who would not otherwise be liable. And the Restatement of Suretyship clearly exonerates secondary obligors from claims for compensation by principal obligors in similar circumstances. Specifically, it states:

> When the principal obligor is charged with notice of the secondary obligation, the principal obligor owes the secondary obligor a duty to perform the underlying obligation at the time the performance is due. While, if the principal obligor breaches this duty and the secondary obligor is called on to perform the secondary obligation, the principal obligor will have the duty to reimburse the secondary obligor, it is inequitable for the secondary obligor to be compelled to suffer the inconvenience and temporary loss that performance of the secondary obligation will entail. Thus, if the principal obligor has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interests. The right to such relief is sometimes called the right of exoneration.

*Id.* § 21 cmt. i.

 The equitable principles behind the right of exoneration between principal obligors and secondary obligors also apply between principal sureties and subsureties. *See* Peter A. Alces, *The Law of Suretyship and Guaranty* §§ 5:6, 6:30 at 6–39 (2003). It is undisputed that Irish, as the principal surety, had notice of Woods's subsuretyship. Hence, in "purchasing" Note III rather than paying the Note, Irish breached his duty of performance to Woods. Woods could pay Irish as a holder of Note III. But to allow that action would entitle Woods, as the subsurety, to seek reimbursement from Irish in the same amount. As the Restatement of Suretyship notes, however, such a result would be inequitable, as it would cause Woods to suffer an inconvenience and temporary loss. *See* Restatement of Suretyship § 21 cmt. i. As such, Woods has the right of exoneration against Irish's amended Count I, and Irish has again failed to state a claim upon which relief can be granted.

## Conclusion

The plain text of Note III, Woods's guaranty of Note III, and the facts alleged in Irish's complaints demonstrate that Irish, as a borrower and accommodation party to the L.L.C. on Note III, is both a primary obligor and the principal surety on that Note for any debt owed in the event of a default by the L.L.C. And Woods's guaranty demonstrates that his liability on Note III is secondary to that of both the L.L.C. and Irish. Under those circumstances, Irish, the principal surety, is fully liable for the cost of performance while Woods is a subsurety liable only in the event the L.L.C. or Irish should fail to perform. *See id.* § 53(3). Hence, Irish is not entitled to contribution from Woods.

*See id.* § 59 cmt. a. Nor may Irish recover from Woods as a holder merely by purchasing Note III. *See id.* § 21 cmt. i. Thus, Irish has failed to state a claim upon which relief can be granted.

Affirmed.

MAY, J., and MATHIAS, J., concur.