PIONEER LUMBER AND SUPPLY COMPANY *v.* FIRST-MERCHANTS NATIONAL BANK OF MICHIGAN CITY AND ARNOLD BASS AND BARBARA BASS AND RICHARD RAMON EVANS.

[No. 3-474A65. Filed June 21, 1976. Rehearing denied July 28, 1976. Transfer denied January 26, 1977.]

---

*Terry K. Hiestand, Harris & Welsh,* of Chesterton, for appellant.

*Donald E. Transki,* of Michigan City, for appellee First-Merchants National Bank, *Alvin D. Blieden,* of Michigan City, for appellees Bass, *Donald D. Martin,* of Michigan City, for appellee Evans.

STATON, P.J.—Pioneer Lumber and Supply Company had performed labor and furnished materials for the construction of a new home which was being built for Arnold Bass and his wife by Richard Ramon Evans, a contractor. First-Merchants National Bank joined Pioneer as a party in its mortgage foreclosure action against the Bass property. Before the foreclosure action, Arnold Bass and his wife gave the Bank a mortgage to secure a $20,000.00 construction note executed by Richard Ramon Evans and his wife, Evans failed to pay the $20,000.00 note or his pioneer bill.

Pioneer filed a cross-claim against Bass for the monies owed to Evans under the construction contract. It contended that the mortgage was not supported by a debt. The trial court

found that the mortgage was supported by a debt and that Bass did not owe Evans any monies under the construction contract. We affirm the trial court's judgment.

On December 11, 1970, Arnold Bass, who with his wife owned an undeveloped parcel of land, contracted with Richard Ramon Evans for the construction of a $29,000.00 single-family house. Between December 11 and December 18, Mr. and Mrs. Bass and Evans met with a representative of First-Merchants National Bank to discuss the possibility of obtaining a loan to finance the construction. On December 18, 1970, the construction loan documents were executed. Mr. and Mrs. Evans executed a promissory note in the amount of $20,000.00 due June 18, 1971, in favor of the Bank. At the same time, Mr. and Mrs. Bass executed a real estate mortgage on their property in favor of the Bank as mortgagee, which provided:

> "This Mortgage is given to secure the performance of the provisions hereof and the payment of the indebtedness of the Mortgagors to the Mortgagee as evidenced by a promissory note of even date herewith hereinafter referred to as Note in the principal sum of Twenty Thousand and no/00— Dollars ($20,000.00) executed by the Mortgagors and payable to the order of the Mortgagee, repayable in installments together with interest as provided for in said Note, the final installment being due and payable on June 18, 1971, all without relief from valuation or appraisement laws and with attorney's fees."

Although the mortgage agreement referred to a promissory note executed by Bass and his wife (mortgagors), there was no such note. There was only one note, executed by Evans on the same date as the mortgage, in the described amount, to the described payee, with the described maturity date.

First-Merchants Bank paid out to Evans' Building Account, without any prior approval of Bass, the following sums on the following dates:

$5,000.00 on December 23, 1970
$5,000.00 on January 25, 1971
$7,000.00 on February 24, 1971
$3,000.00 on March 15, 1971

On August 13, 1971, the Bank provided a further loan to complete the construction. Bass executed a promissory note payable to the Bank in the amount of $2,000.00, due October 13, 1971, and executed a real estate mortgage on the property in favor of the Bank to secure payment of this note. The Bank paid this $2,000.00 loan directly to Bass. There is no dispute over the validity of this $2,000.00 note and mortgage or over the validity of the Bank's lien on the Bass property for this amount plus interest.

Evans did not pay the $20,000.00 note when due. The Bank, on October 13, 1971, instituted an action against Evans on the $20,000.00 note and an action against Bass to foreclose both mortgages. The Bank joined Pioneer Lumber & Supply Company as a party to the foreclosure proceedings because Pioneer had filled a notice of intent to hold a mechanic's lien against the Bass property. Pioneer's mechanic's lien, however, was held invalid because Pioneer failed to give notice to Bass, pursuant to IC 1971, 32-8-3-1 (Burns Code Ed.), within fourteen days from the date of the first delivery of materials or the first labor performed.

In the course of the foreclosure proceedings, Pioneer learned of the discrepancy between the description of the note in the mortgage agreement and the note actually executed. Pioneer asserted a cross-claim against Bass, claiming a lien, to the extent that the contractor Evans owed Pioneer money, on any monies owed by Bass to Evans on the building contract. On March 19, 1973, Pioneer gave notice to Bass of its intent to claim these funds pursuant to IC 1971, 32-8-3-9 (Burns Code Ed.). Pioneer's claim against Evans is for $10,121.69. Pioneer contends that Bass owes contractor Evans more than $19,000.-00, which is more than sufficient to satisfy Pioneer's claim.

Pioneer argues that a mortgage must be supported by a debt. Since there was no $20,000.00 note executed by Bass, as described in the mortgage agreement, and since there was no written agreement obligating Bass as a guarantor of Evan's $20,000.00 note, Pioneer asserts that the mortgage is invalid

and that Bass does not owe the Bank any money on the $20,-000.00 note. Pioneer contends that Bass owes contractor Evans on the building contract, and that contractor Evans in turn owes the Bank on his unpaid unsecured promissory note.

The trial court entered special findings of fact and conclusions of law at Pioneer's request. The court found that the parties to the construction financing agreement had understood and agreed that the Bank was to pay the proceeds of the loan to Evans "on behalf of" Bass, who had agreed to secure Evans' loan by a first mortgage on the real estate. The trial court concluded that, after the Bank had disbursed the full $20,000.00 to Evans, Bass had paid the contractor Evans the full contract price.[1] Thus, no money was owed by Bass to Evans, and no money was available on which Pioneer could assert its claim. The trial court entered judgment against Pioneer on its cross-claim against the Basses.

Pioneer contends that the court's findings of fact and conclusions of law are contrary to and not supported by the evidence and the law. We may not weigh the evidence or judge the credibility of the witnesses when we review the evidence to determine if the court's special findings are supported by the evidence. *In re Adoption of Lockmondy* 168 Ind. App. 563, 343 N.E.2d 793. Even if the special findings of fact are not supported by the evidence, we must affirm if the evidence supports the court's general finding against appellant Pioneer. *In re Adoption of Lockmondy, supra; Hunter* v. *Milhous* (1973), 159 Ind.App. 105, 305 N.E.2d 448.

---

1. The contract price was $29,000.00. There were extras of $260.00. At the signing of the contract, Bass paid Evans $1319.59. There were credits on the contract price of $2680.41. Bass paid Evans $2,000.00 in August to complete the construction (the proceeds of the second loan from First-Merchants Bank). Bass testified that he had to furnish $4253.39 worth of labor and materials to complete the construction. After these adjustments to the contract price, there was due from Bass to Evans about $18,900.00. Bass testified that, by his calculations, Evans owed him money, since Evans had received the proceeds of the $20,000.00 loan.

It is true that a mortgage must be supported by a debt, unless it is sustainable as a gift. *Leader Publishing Co.* v. *Grant Trust & Savings Co.* (1910), 174 Ind. 192, 91 N.E. 498. It is also true that the description in the mortgage of the indebtedness secured need not be literally accurate, but "must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Bowen* v. *Ratcliff* (1895), 140 Ind. 393, 397, 39 N.E. 860, 862. The purpose of requiring a reasonably certain description of the debt is "to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." *New* v. *Sailors* (1888), 114 Ind. 407, 410, 16 N.E. 609, 610.

In the present case, Bass testified that he understood and agreed that, by executing a mortgage "putting our house up for security," he and his wife had guaranteed payment under the $20,000.00 note. The Bank representative testified that it was the intent of the parties to the construction financing agreement that the mortgage on the Bass property be taken as security for repayment of the construction loan. From this evidence, the trial court could have found that the parties intended that the mortgage was security for the $20,000.00 note executed by Evans. By Bass' own admission, the trial court could have found that the mortgage was supported by consideration and was valid.

Pioneer first asserts that the mortgage is invalid because it does not accurately define the debt "so far as it goes." The debt, however, was described in the mortgage in minute detail as to amount, date of execution, maturity date, and payee. The only inaccuracy was in the description of the maker. There is no suggestion that any fraud was or could have been per-

petrated by this apparent oversight.[2] Pioneer has not shown that it relied to its detriment on the inaccurate description in the mortgage. Pioneer did not learn of the discrepancy until March of 1973. Pioneer performed work and furnished materials for construction of the house in June of 1971. Pioneer does not allege that it was misled by the technical error in the mortgage description.

We conclude that the description of the debt in the mortgage was sufficiently precise to preclude the substitution of any debt other than the note executed on December 18, 1970, in the amount of $20,000.00, due June 18, 1971. There was only one note executed on that date with those terms. The mortgage was intended by the parties to secure repayment of that debt. Pioneer does not allege that there has been a substitution of debts. Pioneer does not allege that it has relied to its detriment on the inaccurate description in the mortgage. In the absence of fraud or overreaching, we must affirm the court's decision to uphold the intent of the parties to the construction agreement.

Pioneer contends that there was no written agreement by which Bass was obligated to guarantee payment of the Evans note, and that the Indiana Statute of Frauds prevents enforcement of any unwritten agreement of guarantee. Thus, Pioneer argues, the mortgage is not supported by consideration and is invalid. The Indiana Statute of Frauds provides:

"No action shall be brought in any of the following cases:
* * *
"Second. To charge any person, upon any special promise, to answer for the debt, default, or miscarriage of another; . . ." IC 1971, 32-2-1-1 (Burns Code Ed.).

It is well-settled, however, that only parties and privies have the right to plead the statute of frauds defense. *Cannon* v.

---

2. The phrase "executed by the Mortgagors" appeared in the preprinted mortgage agreement. The details of the amount of the note and its maturity date were typed into blanks in the form contract, but the preprinted designation of the maker was not crossed out and corrected.

*Castleman* (1905), 164 Ind. 343, 73 N.E. 689; *Jackson* v. *Stanfield* (1894), 137 Ind. 592, 36 N.E. 345. Bass did not assert the defense, and Pioneer cannot assert it for him or in his stead.

Whether or not the evidence supports the trial court's conclusion that the loan proceeds were paid by the Bank to Evans "on behalf of" Bass, we conclude that the evidence clearly supports a finding that Bass intended to put up his land as security for Evans' promise to repay the $20,000.00 note. Bass' obligation, in the event of Evans' default, was sufficient to support the mortgage. When Evans failed to pay the mortgage when due, Bass' land became subject to foreclosure proceedings to repay the debt. Therefore, as of June 1971, Bass was obligated to pay the $20,00.00 plus interest to the extent that his improved land was worth the balance due. At this time, Bass acquired a right of set-off against Evans as to any monies owing on the building contract. When the amount due on Evans' note is set off against the contract balance due to Evans, it is clear that, on March 19, 1973, Bass did not owe any money to Evans on the contract. Thus, there were no monies owing from Bass to Evans upon which Pioneer could assert its statutory claim.

The judgment of the trial court is affirmed.

Hoffman, J., concurs; Garrard, J., concurs in result.

NOTE.—Reported at 349 N.E.2d 219.