The COMMERCIAL BANK, Appellant (Plaintiff Below),

v.

John W. ROCKOVITS; Patricia A. Rockovits; Package, Inc.; Hammond Clinic; State of Indiana and Hammond Electric Company, Appellees (Defendants Below).

INDIANA FEDERAL SAVINGS & LOAN ASSOCIATION f/k/a First Federal Savings & Loan Association of Valparaiso, Appellee,

v.

John ROCKOVITS; Patricia A. Rockovits; the Commercial Bank, Crown Point, Indiana; Calumet National Bank; Hammond Clinic; Package, Inc.; Hammond Electric Company; Boyd Bultman; C.I.P., Inc.; Thomas E. Johnson; and State of Indiana, Appellees.

No. 45A04–8601–CV–21.

Court of Appeals of Indiana, Fourth District.

Nov. 10, 1986.

Rehearing Denied Jan. 13, 1987.

---

Jill L. Olson, Theodoros, Anderson & Tauber, Merrillville, for appellant.

Joseph S. Reid, Highland, for appellees.

YOUNG, Judge.

The Commercial Bank appeals from a dismissal for failure to state a cause of action upon which relief can be granted in a suit to foreclose a second mortgage on real estate. The only issue presented is whether the description of indebtedness in the mortgage document is sufficient to create a valid mortgage so as to allow a judgment of foreclosure to be entered. We reverse and remand to the trial court for further proceedings consistent with this opinion.

On July 16, 1973, John and Patricia Rockovits signed a promissory note in the amount of $9,000 and a mortgage in favor of The Commercial Bank. The mortgage contained the following language:

This mortgage is given to the mortgagee for the securing of all indebtedness already owing by John W. Rockovits and Patricia A. Rockovits, husband and wife mortgagors to said The Commercial Bank, Crown Point, Indiana, and is also given to secure all indebtedness or liability, of every kind, character and description of the mortgagors, or either of them, to the mortgagee hereafter created, such as future loans, advances overdrafts, and all other indebtedness that may accrue to said Bank by reason of the mortgagors, or either of them, becoming surety or endorser for any other person, whether said indebteness was originally payable to said Bank or has come to it by assignment or otherwise, and shall be binding upon the mortgagors, and shall remain in full force and effect until all said indebtedness is paid. This mortgage shall secure the full amount of said indebtedness without regard to the time when same was made.

On February 8, 1978 and July 15, 1978, the Rockovits became guarantors of two promissory notes payable to The Commercial Bank by Lion Construction Company. These notes were in the aggregate amount of $11,200. On June 11, 1981, the Rockovits signed an extension agreement on the July 16, 1973 note.

The Rockovits and Lion Construction Company defaulted on the three promissory notes. The Commercial Bank filed its Complaint on Note and Guarantee Agreements to Foreclose Second Mortgage. This complaint was then amended to include Calumet National Bank, a judgment creditor, as a party defendant. The judgment giving Calumet its lien was rendered on September 12, 1980. Calumet moved to dismiss Commercial's complaint pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(6). The basis of Calumet's motion was that the language in the mortgage document did not describe the Rockovits' indebtedness with sufficient specificity to meet the requirements of IND.CODE 32–

1–2–15 and therefore no valid mortgage existed upon which Commercial could request foreclosure. The trial court granted Calumet's motion and it is this ruling which Commercial appeals.

■ While Calumet admits that open-ended mortgages [1] are valid in Indiana (Appellee's Brief, p. 8), it argues that such mortgages must set a dollar limitation on the amount of the debt in order for the mortgage to be valid.[2] Statutory and case law, however, do not support this argument.

Our code provides:

Any mortgage of lands worded in substance as follows: 'A.B. mortgages and warrants to C.D.' [here describe the premises] 'to secure the repayment of' [here recite the sum for which the mortgage is granted, or the notes or other evidences of debt, or a description thereof, sought to be secured, also the date of repayment,] the said mortgage being dated and duly signed, sealed and acknowledged by the grantor, shall be deemed and held to be of good and sufficient mortgage to the grantee, his heirs, assigns, executors and administrators, with warranty from the grantor and his legal representatives of perfect title in the grantor and against all previous encumbrances....

IND.CODE 32–1–2–15. The statute does not require that the mortgage refer specifically to the amount of indebtedness or the notes which evidence the debt. It only requires the debt to be described. Furthermore, literal accuracy in describing the debt is not required. "[T]he description must be correct, as far as it goes, and full enough to direct attention to the sources of the correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it by the language used." *Bowen v. Ratliffe* (1895), 140 Ind. 393, 39 N.E. 860, 861–862.

The mortgage in this case directed attention to Commercial as the source of correct information regarding the debt owed to it by the Rockovits. Calumet does not argue that it was in any way misled or deceived as to the nature of the debt or its amount.[3] It simply argues that the lack of a maximum amount in an open-end provision will cause a mortgage to fail. It overlooks, however, the case of *In re Woodruff* where an open-end provision that did not contain a dollar limitation was held to create a valid security interest for the purpose of granting the mortgagee status as a secured creditor in a bankruptcy proceeding. (7th Cir.1959), 272 F.2d 696.

■ In construing an open-end provision, courts look to the language in the mortgage to determine whether the parties intended the security of the mortgage to operate upon a pre-existing or subsequently created indebtedness which is not specifically described in the mortgage. *Merchants Nat. Bank v. H.L.C. Enter.* (1982), Ind.App., 441 N.E.2d 509, 513 (*quoting Monroe County Bank v. Qualls* (1929), 220

---

1. An open-ended mortgage is a mortgage which provides for future advances on the given mortgage and increases the amount of the existing mortgage. BLACK'S LAW DICT., p. 984 (5th ed.).

2. Calumet cites the following cases in support of its argument: *Bowen v. Ratliffe* (1895), 140 Ind. 393, 39 N.E. 860; *Citizen's Bank and Trust Co. v. Gibson* (1984), Ind.App., 463 N.E.2d 276; *Merchant's Nat. Bank v. H.L.C. Enter.* (1982), Ind. App., 441 N.E.2d 509; *Greech v. LaPorte Credit Ass'n* (1981), Ind.App., 419 N.E.2d 1008. While the mortgages in the cited cases did contain dollar limitations, they were not found valid on the basis of the limitations. In fact, they were upheld by construing descriptions of indebtedness similar to that used by Commercial.

3. We realize that "[t]he purpose of requiring a reasonably certain description of the debt is to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." *Gallagher v. Central Indiana Bank, N.A.* (1983), Ind.App., 448 N.E.2d 304, 307 (*quoting New v. Sailors* (1888), 114 Ind. 407, 410, 16 N.E. 609, 610). Calumet, however, fails to inform the court how fraud could occur where a provision such as Commercial's exists. The provision covers all existing or future indebtedness while the mortgage is in effect. Subsequent creditors are thereby put on notice that the property may provide little or no security. Their option is to refuse to extend credit while the mortgage is in effect.

Ala. 499, 125 So. 615). Although the mortgage did not specifically describe the indebtedness in terms of a dollar amount, the mortgage was to secure "all indebtedness already owing ... all indebtedness hereafter created ... and all other indebtedness that may accrue ... by reason of the mortgagors, or either of them becoming surety or endorser for any other person." It is clear from this language that Commercial and the Rockovits intended the mortgage to secure the $9,000 loaned to the Rockovits when the mortgage was created and the $11,200 indebtedness that was subsequently created when the Rockovits became sureties for Lion Construction Company. The trial court therefore erred in dismissing Commercial's complaint to foreclose the mortgage.

We reverse and remand for further proceedings which are consistent with this opinion.

CONOVER, P.J. and MILLER, J., concur.