SPCP GROUP, L.L.C., a Delaware Limited Liability Company, Appellant–Plaintiff,

v.

DOLSON, INC., an Indiana corporation, Maurice E. Doll, and individual, Shanna R. Doll, an individual, Randall L. Holland, an individual, Earlene L. Holland, and individual, Ecolab, Inc., State of Indiana Department of Revenue and State of Indiana Alcohol and Tobacco Commission, Appellees–Defendants.

No. 19A01–0912–CV–604.

Court of Appeals of Indiana.

Oct. 4, 2010.

Laura S. Reed, Ted W. Nolting, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorney for Appellant.

Marilyn R. Ratliff, Evansville, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

SPCP Group, LLC, appeals the trial court's orders denying its motion for partial summary judgment and granting defendant Earlene Holland's cross-motion for summary judgment on SPCP's complaint seeking foreclosure of a mortgage on Holland's real property.[1] SPCP raises two issues, of which we find the following restated issue dispositive: whether the trial court properly determined there is no genuine issue of material fact and Holland is entitled to judgment as a matter of law. Concluding the undisputed facts establish that the mortgage SPCP seeks to foreclose inaccurately and inadequately describes the debt it purports to secure, and as a result, SPCP cannot establish an essential element of its claim, we affirm.

*Facts and Procedural History*[2]

The following facts are undisputed. Holland is the sole owner of four contigu-

---

1. Although there are multiple defendants in this case, only Holland participates in this appeal. Nonetheless, because the other defendants—Dolson, Inc., Maurice E. Doll, Shanna R. Doll, Ecolab, Inc., the Indiana Alcohol and Tobacco Commission, and the Indiana Department of Revenue—are parties in the trial court, they remain parties on appeal pursuant to Indiana Appellate Rule 17(A).

2. We heard oral argument on August 25, 2010, in Indianapolis.

ous lots in Jasper, Indiana, referred to as the Real Estate. On June 30, 1999, Holland executed a lease ("the Lease") of the Real Estate to Dolson, Inc. ("Dolson") for the purpose of operating a Garfield's restaurant and pub. The Lease was signed by Shanna R. Doll and Maurice E. Doll ("the Dolls"), acting as Dolson's president and secretary/treasurer respectively, and had a term of fifteen years. Section 14 of the Lease, relating to "Mortgage Financing," contained the following relevant provisions:

>  1. *Construction Mortgages.* Upon the circumstances and subject to the terms contained in this Section, [Dolson] may, in conjunction with permanent financing, require [Holland] to join with [Dolson] in the execution of a mortgage or mortgages to provide permanent financing for the improvement of the already existing commercial buildings.
>
>  * * *
>
>  4. *Security.* The real estate shall only secure or subordinate the mortgage up to the principle [sic] amount of Seven Hundred Thousand Dollars ($700,000.00).
>
>  * * *
>
>  7. *Refinancing.* [Dolson] shall have the right to refinance the permanent mortgage from time to time provided that any new permanent mortgage must comply with the following conditions:
>
>  * * *
>
>  (c) The new permanent mortgage . . . shall not have a term longer than the term of this Lease, or any exercised renewal term of this Lease. . . .
>  . . . If the new permanent mortgage complies with the aforesaid conditions, [Holland] and [Dolson] shall join in the

execution . . . and delivery of such new first mortgage . . . and any such permanent mortgage shall cover and be a lien on the premises in its entirety. . . . Provided, however, that any such mortgage shall provide that it be paid in full before the last two years of the term of this Lease.

Appellant's Appendix at 273–74. The Dolls also signed, in their individual capacities, a guaranty of the Lease. At some point in time not clear from the record, a first mortgage on the Real Estate was executed in favor of DuBois County Bank.

On December 24, 2001, Holland and Dolson executed a new mortgage on the Real Estate ("the Mortgage"). The Mortgage was executed in favor of Terre Haute First National Bank ("the Bank"), and was for the purpose of refinancing.[3] The Mortgage purported to secure "Secured Debt" not exceeding $700,000 and defined in Paragraph 4 of the Mortgage as:

>  A. Debt incurred under the terms of all promissory notes(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

Promissory Note dated December 27, 2001 executed by Dolson, Inc. and Maurice E. Doll and Shanna R. Doll and C. Wayne Thompson and maturing December 27, 2021.

*Id.* at 283. In Paragraph 24 of the Mortgage, Holland and Dolson agreed that:

---

3. The Note, discussed *infra*, stated the purpose of the loan was to "Re–Finance Mortgage." Appellant's App. at 289. SPCP's counsel also stated at the summary judgment hearing that the Mortgage "was a re-finance and a buy-out of a prior mortgage." Transcript at 7.

Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. *Id.* at 287.

On December 27, 2001, Dolson and the Dolls executed a promissory note (the "Note") to the Bank in the principal amount of $700,000 with a maturity date of December 27, 2021. C. Wayne Thompson[4] did not execute the Note, and Holland did not review the Note before or after she signed the Mortgage. Also on December 27, 2001, Thompson executed in favor of the Bank an unconditional guaranty ("the Guaranty") in consideration for the credit advanced to Dolson. The Guaranty provided that Thompson "hereby guarantees the full and prompt payment, when due ... of any and all notes ... and other obligations of [Dolson]" not exceeding a principal sum of $700,000. *Id.* at 117.

Dolson and the Dolls failed to make timely payments on the Note, placing them in default. In September 2005, the Bank assigned the Note, the Mortgage, and the Guaranty to SPCP. On September 26, 2005, SPCP filed its complaint against Holland, Dolson, the Dolls, and Thompson, seeking, among other things, foreclosure of the Mortgage on the Real Estate. In December 2005, Dolson filed for Chapter 11 bankruptcy, resulting in a stay of all state court proceedings as to Dolson and the Dolls.

On June 6, 2007, SPCP and Thompson executed a release whereby, for consideration of $550,000, SPCP discharged all debts, claims, and causes of action against Thompson. The release was executed without Holland's knowledge or consent. On July 1, 2009, SPCP filed, and the trial court granted, a motion to dismiss SPCP's claims against Thompson. The same day, SPCP amended its complaint to add counts against Ecolab, Inc., the owner of a dishwasher leased to Dolson, and against the Indiana Alcohol and Tobacco Commission and Indiana Department of Revenue (the "State agencies") in relation to Dolson's liquor license.

On July 30, 2009, SPCP filed a motion for partial summary judgment against Holland and Dolson.[5] On August 18, 2009, Holland filed a response and cross-motion for summary judgment against SPCP. In her affidavit designated in support, Holland averred:

6. While I did not read [the] entire [Mortgage] before signing it, I did read the description of the Promissory Note it secured ... which description was consistent with my understanding of the transaction for which I was obligating my property.

7. I first learned at the time this suit was filed, or shortly before, that the Promissory Note allegedly secured by the Mortgage on my property was not as described in the Mortgage, in that C. Wayne Thompson was not a maker.

8. I would not have signed the Mortgage had the description of the Promissory Note being secured by the Mortgage not included C. Wayne Thompson as a maker of that Promissory Note.

*Id.* at 363.

The trial court held a hearing on the summary judgment motions and, on Octo-

---

4. The record indicates Thompson is Shanna Doll's father.

5. SPCP's motion also sought partial summary judgment against the State agencies, but by agreement of the parties, that part of SPCP's motion is stayed. Dolson did not oppose SPCP's motion for partial summary judgment, and the record shows a receiver had been appointed for Dolson.

ber 21, 2009, issued its order denying SPCP's motion and granting Holland summary judgment against SPCP. The trial court concluded Holland was entitled to judgment as a matter of law because the Mortgage was invalid and unenforceable on multiple grounds, including:

> b) ... Holland is entitled to expect that the note secured by [the Mortgage] will be executed in the manner described in the mortgage. The description of the note contained in the mortgage is not correct as far as it goes. The mortgage states that "... Dolson, Inc. and Maurice E. Doll and Shanna R. Doll and C. Wayne Thompson ..." would be makers of a note to be executed three days later. C. Wayne Thompson was not a maker on any note subsequently executed. The note actually executed on December 27, 2001 was materially different than the note described in the mortgage ... Holland relied to her detriment on the inaccurate description ... [and] did not agree to pledge her property as security for the note that was actually signed.

*Id.* at 20. The trial court denied SPCP's motion to reconsider but granted SPCP's motion to certify its summary judgment order for interlocutory appeal. This court accepted jurisdiction.

### *Discussion and Decision*

### I. Standard of Review

We review the grant or denial of summary judgment de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001 (Ind.2009). In so doing, we stand in the same position as the trial court, and must determine whether the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269–70 (Ind.2009). In making this deter-

mination, we construe the evidence in a light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine factual issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom,* 847 N.E.2d 175, 180 (Ind.2006). The fact the parties have filed cross-motions for summary judgment does not alter our standard of review, as we "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *T–3 Martinsville, LLC v. U.S. Holding, LLC,* 911 N.E.2d 100, 109 (Ind.Ct.App.2009) (quotation omitted), *trans. denied.*

### II. Holland's Motion for Summary Judgment

■ Holland sought, and the trial court granted in her favor, summary judgment on the theory that SPCP cannot prove an essential element of its foreclosure claim, namely, that the Mortgage on her Real Estate is enforceable. Basic requirements for a valid mortgage are provided by statute:

> ■ A mortgage of land that is:
> (1) worded in substance as "A.B. mortgages and warrants to C.D." (here describe the premises) "to secure the repayment of" (here recite the sum for which the mortgage is granted, or the notes or other evidences of debt, or a description of the debt sought to be secured, and the date of the repayment); and
> 2) dated and signed, sealed, and acknowledged by the grantor; is a good and sufficient mortgage to the grantee and the grantee's heirs, assigns, executors, and administrators....

Ind.Code § 32–29–1–5. Thus, a mortgage must recite both the date of repayment and one or more of: 1) the sum for which it is granted; 2) the notes or evidences of debt; or 3) "a description of the debt

sought to be secured." *Id.; see In re Canaday*, 376 B.R. 260, 269 (Bankr. N.D.Ind.2007) (applying Indiana law); *cf. Commercial Bank v. Rockovits*, 499 N.E.2d 765, 767 (Ind.Ct.App.1986) (applying similar statute formerly codified at Ind.Code § 32–1–2–15).

■ It is well settled that "[l]iteral accuracy in describing the debt secured by the mortgage is not required, but the description of the debt must be correct, so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Bowen v. Ratcliff*, 140 Ind. 393, 39 N.E. 860, 861–62 (1895); *see also Liberty Mortgage Corp. v. National City Bank*, 755 N.E.2d 639, 643 (Ind.Ct.App.2001) (citing *Bowen* ), *trans. denied.* "A reasonably certain description of the debt is required so as to preclude the parties from substituting debts other than those described for the mere purpose of defrauding creditors." *Plummer & Co., Inc. v. Nat'l Oil & Gas. Inc.*, 642 N.E.2d 291, 292 (Ind.Ct.App. 1994), *trans. denied.*

■ Here, the Mortgage signed by Holland purported to secure debt "incurred under the terms of" a "Promissory Note dated December 27, 2001 executed by Dolson, Inc. and Maurice E. Doll and Shanna R. Doll *and C. Wayne Thompson* and maturing December 27, 2021." Appellant's App. at 283 (emphasis added). This de-

scription, while accurate as to the date of execution of the Note and its maturity date, was inaccurate as to the identity of the Note's makers: C. Wayne Thompson did not execute the Note as a co-maker; rather, by executing the separate Guaranty, he became liable only as a guarantor.[6] *See TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1288 (Ind.Ct.App.2009) (a guaranty is "a conditional promise to answer for a debt or default of another person"; "the guarantor promises to pay only if the debtor/borrower fails to pay"). Thus, the Mortgage's description of the debt was not accurate "so far as it goes," *Bowen*, 39 N.E. at 862, in that Thompson was not a primary obligor. This conclusion does not end our inquiry, as we must also determine whether the inaccuracy was sufficiently material to "mislead or deceive, as to the nature or amount" of the debt. *Id.*

In the context of this particular transaction, based on undisputed facts, the answer is yes. Holland, because she agreed to mortgage her Real Estate as security for the debt of others, agreed to act as a surety. *See Owen County State Bank v. Guard*, 217 Ind. 75, 84, 26 N.E.2d 395, 398–99 (1940) ("One who, with the knowledge of the creditor, furnishes collateral to secure the loan of another stands in the relation of surety to the debtor....."); *Merchants Nat'l Bank & Trust Co. of In-*

---

**6.** We acknowledge SPCP's argument the Mortgage does not explicitly state Thompson would be a co-maker, and that by executing the Guaranty as part of the same transaction, "Thompson signed the Note in the capacity of guarantor." Reply Brief of Appellant at 1. However, the phrase "Promissory Note ... executed by Dolson, Inc. and Maurice E. Doll and Shanna R. Doll and C. Wayne Thompson" necessarily implies Thompson would be a co-maker of the Note. We have found no authority indicating the verb "execute" can

refer to signing by a guarantor or surety who is not also a co-maker. While a note can be signed in various capacities, the case SPCP relies upon involved co-makers who were also accommodation parties, or sureties, as among the other makers. *Yin v. Society Nat'l Bank Indiana*, 665 N.E.2d 58, 63–64 (Ind.Ct.App. 1996), *trans. denied.* Further, Indiana cases refer to execution of a note and guaranteeing of a note as different events. *See, e.g., Wisconics Eng'g, Inc. v. Fisher*, 466 N.E.2d 745, 747–48 (Ind.Ct.App.1984), *trans. denied.*

*dianapolis v. Lewark*, 503 N.E.2d 415, 416 (Ind.Ct.App.1987) (treating mortgagor as surety when mortgage secured third-party debt), *trans. denied.* Notwithstanding Holland's obligations under the Lease, which could have required her to execute *a* mortgage in connection with the Dolson business, she was not obligated to execute *the* Mortgage here at issue.[7]

Due to Holland's status as a surety, if Thompson had been liable on the Note as a primary obligor, then any release of Thompson would, as a general rule, also have released Holland and her Real Estate. *See Hendershot v. Charleston Nat'l Bank,* 563 N.E.2d 546, 548–49 (Ind.1990) (where creditor releases primary obligor without surety's consent, surety is discharged, unless creditor in its release explicitly reserves its rights against surety); *Owen County State Bank,* 217 Ind. at 84, 26 N.E.2d at 398–99 (collateral furnished to secure the loan of another "is released by any action of the creditor which would release a surety"). However, because Thompson was only a guarantor of the Note, and thereby a co-surety with Holland,[8] SPCP's June 2007 release of Thompson did not have the effect of releasing Holland. *See First Nat'l Bank of South Bend v. Mayr,* 189 Ind. 299, 127 N.E. 7, 9–10 (1920) (modern rule is creditor's release of one surety does not release co-sureties). In sum, the fact Thompson signed as a guarantor rather than a co-maker of the

Note altered the transaction materially, because it permitted SPCP to release Thompson while validly claiming that Holland and her Real Estate were not thereby discharged.

Further, even if SPCP or its assignor had not elected to release Thompson, the fact Thompson was a guarantor and not a co-maker of the Note changed Holland's remedies against him in the event of a default. If Thompson were a co-maker, Holland's rights against him would have included complete reimbursement and subrogation.[9] *See Hendershot,* 563 N.E.2d at 548–49 (surety has rights to reimbursement and subrogation upon paying obligation of principal debtor). However, because Thompson became liable on the Note only as a guarantor, and thus a co-surety with Holland, Holland was left with, at most, an action against Thompson for pro-rata contribution. *See Irish,* 864 N.E.2d at 1122 (co-surety who performs principal obligation "is entitled to contribution from the other cosureties so that all cosureties bear the burden in equal, or otherwise agreed to, proportions"). For this reason too, therefore, the fact Thompson was a guarantor and not a primary obligor increased Holland's risk of loss.

The designated evidence also makes clear this greater risk of loss was unconsented to by Holland. Holland's understanding of the transaction was that her

---

**7.** As noted above, the Mortgage was for refinancing. The Lease obligated Holland to execute a mortgage for refinancing only if, among other conditions, such a mortgage had a term not longer than the term of the Lease. The Lease was for fifteen years to end in June 2014, but the Mortgage at issue here was for twenty years with a maturity date in December 2021.

**8.** The terms "guarantor" and "surety" are synonymous. *Farmers Loan & Trust Co. v. Letsinger,* 652 N.E.2d 63, 66 & n. 2 (Ind. 1995). Co-suretyship is defined by a "com-

mon liability for the same debt or burden." *Irish v. Woods,* 864 N.E.2d 1117, 1121–22 (Ind.Ct.App.2007), *trans. denied.*

**9.** Absent agreement to the contrary, Thompson's liability on the Note would have been joint and several. *See* Ind.Code § 26–1–3.1–116(a) ("Except as otherwise provided in the instrument, two (2) or more persons who have the same liability on an instrument ... are jointly and severally liable in the capacity in which they sign.").

Real Estate would be subject to foreclosure only if the Dolls *and* Thompson failed to make payments on the Note. Holland testified by affidavit that she did not learn until shortly before this litigation that Thompson was not a co-maker of the Note, and in her deposition stated her understanding was "Maury Doll, Thompson and Shanna Doll have to come up with the money" before any possible foreclosure. Appellant's App. at 365. It is undisputed that Holland was never presented with and never signed an amended mortgage setting forth Thompson's liability as only a guarantor of the Note. It is also undisputed that Holland did not consent to SPCP's release of Thompson. Thus, Holland never acquiesced in SPCP's treatment of Thompson as anything other than a primary obligor.

■■■ SPCP argues the fact Thompson executed the Guaranty instead of executing the Note as a co-maker does not invalidate the Mortgage because in Paragraph 24 of the Mortgage Holland agreed in advance to "change[s] in the terms of this Security Instrument or any evidence of debt" without her consent. *Id.* at 287. However, where a mortgagor who occupies the position of a surety consents in advance to future modifications of the underlying obligation, "such clauses are to be strictly construed against the mortgagee." *First Fed. Sav. & Loan Ass'n of Gary v. Arena,* 406 N.E.2d 1279, 1284 (Ind.Ct.App. 1980); *see S–Mart, Inc. v. Sweetwater Coffee Co.,* 744 N.E.2d 580, 583, 587 (Ind.Ct. App.2001) (continuing guaranty agreement extending to "renewals, modifications, extensions of or substitutions" of underlying obligation construed to apply only to non-material modifications or material modifications shown to be within parties' contemplation when executing agreement), *trans. denied.* Paragraph 24 speaks to changes in "terms" of the Mortgage or "evidence of debt" but does not purport to authorize changes to the nature or amount of the debt itself. Allowing changes in the evidence of debt does not necessarily mean the identity of makers or guarantors may be changed; a maker or guarantor is not a "term" of a note. Further, as shown above, it was not within Holland's contemplation when she signed the Mortgage that Thompson would be liable only as a guarantor. Therefore, Paragraph 24 did not permit Thompson, without Holland's consent, to sign as a guarantor rather than a comaker of the Note.

SPCP further argues the trial court erred by granting summary judgment to Holland because this court has upheld mortgages that inaccurately described the maker of the underlying obligation, citing *Gallagher v. Cent. Ind. Bank, N.A.,* 448 N.E.2d 304 (Ind.Ct.App.1983) and *Pioneer Lumber & Supply Co. v. First–Merchants Nat'l Bank of Michigan City,* 169 Ind.App. 406, 349 N.E.2d 219 (1976). In *Pioneer,* a homeowner gave the bank a mortgage to secure a construction loan to his builder. The mortgage erroneously referred to the homeowner/mortgagor as the maker of the note, instead of the builder who actually executed the note. This court affirmed the trial court's conclusion the inaccuracy did not invalidate the mortgage, noting the parties to the mortgage intended the mortgage would secure the note executed by the builder, and the party challenging the mortgage did not allege any substitution of debts or provide any evidence it relied to its detriment on the inaccurate description. 169 Ind.App. at 411–12, 349 N.E.2d at 223. In *Gallagher,* the mortgagors gave the bank a mortgage to secure a loan to their son and his wife, but the mortgage erroneously referred to the mortgagors as "Borrower." 448 N.E.2d at 307. This court likewise concluded the mortgage's description of the debt, though inaccurate, was not inadequate, relying on *Pioneer* and

noting that despite the inaccuracy, all parties were aware the mortgage was intended to secure the son's and daughter-in-law's debt. *Id.* at 307–08.

Here, unlike in *Pioneer* and *Gallagher*, we cannot say that all parties to the Mortgage were aware or intended that the Mortgage would secure a note of which Thompson was a guarantor but not a co-maker. To the contrary, Holland presented undisputed evidence that in mortgaging her Real Estate, she relied to her detriment on the Mortgage's inaccurate description of Thompson as a co-maker, in that she would not have signed the Mortgage had she not seen Thompson's name next to Dolson and the Dolls as those who would execute the Note. Because Holland's challenge to the Mortgage is premised on a substitution of debts, which was not alleged in *Pioneer* or *Gallagher*, those cases are consistent with the trial court's decision granting summary judgment to Holland.[10] In sum, SPCP cannot establish that the Mortgage is valid, because Holland relied to her detriment on the Mortgage's inaccurate description of indebtedness, an inaccuracy that was material because allowing Thompson to execute a guaranty rather than the Note as a co-maker placed Holland in a different position and increased her risk of loss. The trial court properly granted Holland summary judgment.

### Conclusion

The trial court properly determined that there is no genuine issue of material fact and Holland is entitled to judgment as a matter of law, because the mortgage SPCP seeks to foreclose contains an inaccurate and materially misleading description of the debt it purports to secure. The trial court's orders denying SPCP's motion for partial summary judgment and granting Holland's cross-motion for summary judgment are therefore affirmed.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

---

**10.** Finally, SPCP argues that detrimental reliance on an inaccurate description of a debt is relevant only if the reliance is by a creditor or third party, and that Holland was not a creditor or third party. SPCP is correct that language in Indiana cases focuses on whether a description would be misleading to creditors. *See, e.g., Pioneer,* 169 Ind.App. at 411, 349 N.E.2d at 222. However, while Holland was a party to the Mortgage, she was a third party to the Dolson loan and a creditor of Dolson and the Dolls with respect to both the Lease and any rights of subrogation arising under the Mortgage.