**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LAMBERT C. GENETOS**
Genetos Retson & Yoon LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**DAVID M. BLASKOVICH**
Woodward & Blaskovich, LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CENTIER BANK, | ) | |
| | ) | |
| Appellant- (Defendant/Counter and Cross-Claimant), | ) ) | |
| | ) | |
| vs. | ) | No. 64A03-1309-MF-356 |
| | ) | |
| 1st SOURCE BANK, | ) | |
| | ) | |
| Appellee-(Plaintiff/Counter-Defendant). | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-1111-MF-11442

**June 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

1st Source Bank (1st Source) filed a complaint to foreclose on a mortgage it held against real property owned by Jerry and Lori Jones. Centier Bank (Centier) was named as a defendant due to its secured interest in the property. The trial court ultimately granted 1st Source's motion for summary judgment, entered judgment of foreclosure, and concluded that 1st Source's mortgage had priority over Centier's. Centier appeals and argues that the trial court erred in concluding that 1st Source's mortgage was valid.

We affirm.

On June 29, 2005, J.B. Trim Inc. d/b/a Lansing Glass and Trim (J.B. Trim) executed a promissory note in favor of 1st Source's predecessor[1] in the principal amount of $63,988.25. On the same date, Jerry and Lori Jones each executed a personal guaranty of loans or accommodations made by 1st Source to J.B. Trim. Also on that date, the Joneses executed a mortgage in 1st Source's favor against a parcel of real property located in Valparaiso. The mortgage contained a dragnet clause providing that it would secure all of the Joneses' current and future obligations to 1st Source, whether incurred jointly or individually, and that the total principal amount secured by the mortgage would not exceed $63,988.25. The mortgage was recorded in Porter County on July 6, 2005.

On December 9, 2009, Jerry Jones executed another mortgage against the property, this time in favor of Centier. The mortgage secured a promissory note in the principal amount of $27,500, along with any future debts. The mortgage was recorded in Porter County on December 23, 2009.

---

[1] 1st Source's predecessor in interest was First National Bank, Valparaiso. The parties do not dispute that 1st Source and First National should be treated, for our purposes, as a single entity. Accordingly, for the sake of clarity, we will refer to both 1st Source and its predecessor as 1st Source.

On December 17, 2009, J.B. Trim executed another promissory note in 1st Source's favor in the principal amount of $53,000, with a maturity date of December 17, 2014. On the same date, Jerry Jones executed a personal guaranty which amended and restated his June 29, 2005 guaranty.

In 2011, 1st Source filed a complaint to foreclose on its mortgage, alleging that J.B. Trim and the Joneses[2] were in default. Centier was named as a defendant due to its secured interest in the property, and Centier subsequently filed a cross-claim to foreclose on its mortgage. 1st Source filed a motion for summary judgment against all defendants on October 12, 2012. After a hearing, the trial court entered an order granting 1st Source's motion in part and denying it in part. 1st Source filed a motion to reconsider, and on August 8, 2013, the trial court entered a judgment and decree of foreclosure in favor of 1st Source. The trial court ruled, in relevant part, that 1st Source held a valid mortgage and that its mortgage had priority over Centier's. Centier now appeals, arguing that the trial court erred in granting summary judgment in 1st Source's favor.

"When reviewing a trial court's ruling on a motion for summary judgment, this court stands in the shoes of the trial court and applies the same standards in deciding whether to affirm or reverse the ruling." *Longest ex rel. Longest v. Sledge*, 992 N.E.2d 221, 225 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009). In doing so, we must construe all factual inferences in the non-

---

[2] By the time of the foreclosure proceedings, Lori Jones had changed her name to Lori VanDerWoude.

moving party's favor and resolve all doubts as to the existence of a genuine issue against the moving party. *Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013), *trans. denied*.

We note that the trial court in this case entered findings and conclusions in support of its summary judgment order. "While the entry of specific findings and conclusions offers insight into the reasons for the trial court's decision on summary judgment and facilitates appellate review, such findings and conclusions are not binding on this court." *Minix v. Canarecci*, 956 N.E.2d 62, 67 (Ind. Ct. App. 2011), *trans. denied*. We may affirm an order granting summary judgment on any theory supported by the designated materials. *Minix v. Canarecci*, 956 N.E.2d 62.

Centier argues that the trial court erred in granting 1st Source's motion for summary judgment because 1st Source's mortgage was invalid. In support of this argument, Centier cites Ind. Code Ann. § 32-29-1-5 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014), which provides in relevant part as follows:

A mortgage of land that is:

(1) worded in substance as "A.B. mortgages and warrants to C.D." (here describe the premises) "to secure the repayment of" (here recite the sum for which the mortgage is granted, or the notes or other evidences of debt, or a description of the  debt sought  to  be secured, and the date of the repayment) . . .

is a good and sufficient mortgage . . . .

Centier argues that 1st Source's mortgage was inadequate under the statute because it did not list a maturity date or adequately describe the debt it secured.

4

In support of its argument, Centier relies heavily upon *In re Canaday*, 376 B.R. 260 (Bankr. N.D. Ind. 2010), a case from the United States Bankruptcy Court for the Northern District of Indiana. Similarly, 1st Source relies on *In re Kraft, LLC*, 429 B.R. 637 (Bankr. N.D. Ind. 2010). Although we find these cases informative for their discussion of Indiana law, they are, of course, not binding authority. Ultimately, we conclude that our own case law is sufficient to resolve the issues before us.

Centier asserts that under the plain language of I.C. § 32-29-1-5, a mortgage must contain a description of the secured debt and list the date of repayment. Centier argues that the 1st Source mortgage was "invalid on its face" because it lacks an adequate description of the debt and lacks a maturity date. *Appellant's Brief* at 5. We disagree. This court has not previously interpreted I.C. § 32-29-1-5 to require the sort of specificity Centier insists upon, particularly where, as here, a mortgage contains a dragnet clause. *See Commercial Bank v. Rockovits*, 499 N.E.2d 765 (1986). Instead, we have long held that literal accuracy in describing the debt is not required. *See, e.g., SPCP Group, LLC v. Dolson, Inc.*, 934 N.E.2d 771 (Ind. Ct. App. 2010); *Pioneer Lumber & Supply Co. v. First-Merchants Nat'l Bank of Michigan City*, 169 Ind. App. 406, 349 N.E.2d 219 (1976). It is enough if the description is "correct, so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *SPCP Grp., LLC v. Dolson, Inc.*, 934 N.E.2d at 776 (quoting *Bowen v. Ratcliff*, 140 Ind. 393, 39 N.E. 860, 861-62 (1895)). "A reasonably certain description of the debt is required so as to preclude the parties from substituting debts other than those described for the mere

5

purpose of defrauding creditors." *Liberty Mortg. Corp. v. Nat'l City Bank*, 755 N.E.2d 639, 643 (Ind. Ct. App. 2001), *trans. denied*.

In *Commercial Bank v. Rockovits*, 499 N.E.2d 765, this court found valid a mortgage describing the secured debt in a manner quite similar in substance to the one at issue here. In that case, John and Patricia Rockovits executed a promissory note in the amount of $9,000 and a mortgage in favor of Commercial Bank on the same date. The mortgage made no reference to the promissory note, or the amount of the debt, or its maturity date; instead, it included a broadly worded dragnet clause. Specifically, the mortgage provided as follows:

> This mortgage is given to the mortgagee for the securing of all indebtedness already owing by John W. Rockovits and Patricia A. Rockovits, husband and wife mortgagors to said The Commercial Bank, Crown Point, Indiana, and is also given to secure all indebtedness or liability, of every kind, character and description of the mortgagors, or either of them, to the mortgagee hereafter created, such as future loans, advances overdrafts, and all other indebtedness that may accrue to said Bank by reason of the mortgagors, or either of them, becoming surety or endorser for any other person, whether said indebteness [sic] was originally payable to said Bank or has come to it by assignment or otherwise, and shall be binding upon the mortgagors, and shall remain in full force and effect until all said indebtedness is paid. This mortgage shall secure the full amount of said indebtedness without regard to the time when same was made.

*Id.* at 766. Calumet, a subsequent encumbrancer, challenged the validity of Commercial's mortgage, arguing that it did not describe the debt with sufficient specificity to meet the requirements of the statute.[3]

---

[3] The court analyzed the mortgage under a prior version of I.C. § 32-29-1-5, then codified at Ind. Code § 32-1-2-15, which was nearly identical to the current version of the statute. *See Commercial Bank v. Rockovits*, 499 N.E.2d 765.

In concluding that the description of the indebtedness was sufficient, this court noted that "[t]he statute does not require that the mortgage refer specifically to the amount of indebtedness or the notes which evidence the debt. It only requires the debt to be described." *Id.* at 767. The court also noted that Calumet did not claim that it was in any way misled or deceived as to the nature of the debt or its amount and that the mortgage directed attention to Commercial as the source of correct information relating to the debt. The court reasoned as follows:

> Although the mortgage did not specifically describe the indebtedness in terms of a dollar amount, the mortgage was to secure "all indebtedness already owing ... all indebtedness hereafter created ... and all other indebtedness that may accrue ... by reason of the mortgagors, or either of them becoming surety or endorser for any other person." It is clear from this language that Commercial and the Rockovits[es] intended the mortgage to secure the $9,000 loaned to the Rockovits[es] when the mortgage was created and the $11,200 indebtedness that was subsequently created when the Rockovits[es] became sureties for Lion Construction Company. The trial court therefore erred in dismissing Commercial's complaint to foreclose the mortgage.

*Id.* at 768.

We reach the same conclusion here. Paragraph 4 of the mortgage at issue in this case contained the following description of the secured debt:

> A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
>
> [Blank space appears in original.]
>
> B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract,

7

guaranty, or other evidence of debt *existing now or executed after this Security Instrument* whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. *All obligations Mortgagor owes to Lender, which now exist or may later arise*, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

*Appellant's Appendix* at 33 (emphases supplied). The mortgage also provided that the total principal amount secured by the mortgage, not including interest and other fees, would not exceed $63,988.25.

Although one would expect 1st Source to have described under subparagraph A the personal guaranties executed by the Joneses on the same date as the mortgage, we cannot conclude that the failure to do so rendered the mortgage invalid. When reading the mortgage as a whole, it is clear to us that the parties intended the mortgage to secure *all* of the Joneses' obligations existing at the time the mortgage was executed and those incurred thereafter, up to a maximum principal amount of $63,988.25. We also note that the mortgage lists the name and address of the mortgagee, a source of correct information regarding the debt, and Centier makes no argument that it was in any way misled or deceived by the description of the debt. With respect to Centier's argument that the lack

8

of a maturity date for the secured debt renders the mortgage invalid, we note that the same was true of the mortgage at issue in *Commercial Bank v. Rockovits*, which contained only a general dragnet clause and made no reference to any specific indebtedness.

To the extent Centier argues that the 1st Source mortgage is invalid because it allows for the substitution of debts, we note that this court has explained that this sort of fraud is not a concern when a mortgage contains a dragnet clause. Specifically, the court explained that such a "provision covers all existing or future indebtedness while the mortgage is in effect. Subsequent creditors are thereby put on notice that the property may provide little or no security. Their option is to refuse to extend credit while the mortgage is in effect." *Commercial Bank v. Rockovits*, 499 N.E.2d at 767 n.3. For all of these reasons, we conclude that the trial court did not err in finding that 1st Source held a valid mortgage and affirm its summary judgment ruling.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.

9